THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| YESILADA KREDI VE YATIRIM LTD., | ) | 8:05CV1 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| THOMAS C. WHITMORE, | ) | |
| | ) | |
| Defendant. | ) | |

The plaintiff, a Turkish credit and investment company ("Yesilada"), brings this action against Thomas Whitmore, an attorney in Omaha, Nebraska, alleging that Whitmore breached his duties under an escrow agreement by failing to return certain escrow proceeds to Yesilada. Yesilada asserts claims for breach of an oral and written escrow agreement, breach of fiduciary duty, professional negligence, conversion, and negligence, requesting damages for loss of the escrow deposit funds, as well as consequential damages. (Filing 1, Complaint.)

Defendant Whitmore has filed a motion for partial judgment on the pleadings (filing 14) as to Yesilada's claims for consequential damages because, Whitmore maintains, "when the basis of a plaintiff's claim is the defendant's withholding of money due under a contract, the sole measure of recovery is money withheld, plus interest." (Filing 15, Br. Supp. Def.'s Mot. Partial Jmt. Pleadings at 7.) I shall deny the defendant's motion.

### I. Standard of Review

"A motion for judgment on the pleadings will be granted only where the moving party has clearly established that no material issue of fact remains and the

1

moving party is entitled to judgment as a matter of law." The court must "accept all facts pled by the nonmoving party as true and draw all reasonable inferences from the facts in favor of the nonmovant." Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004) (internal quotation and citation omitted).

## II. Allegations in Complaint[1]

The government of Kuwait awarded a school construction contract worth over $80 million to Al Fajji Trading and General Contracting Company ("Al Fajji") of Kuwait. Al Fajji awarded the foundation subcontract worth over $15 million to Unuvar Construction Company ("Unuvar"), a construction company located in Turkey. The first phase of the subcontract involved supplying rebar. This was an international purchase and sales transaction for which a documentary letter of credit ("DLOC") was required to guarantee payment. (Filing 1, Complaint ¶¶ 9-10.)

Yesilada is a credit and investment company located abroad that serves the investment and transaction needs of international businesses in Greece, Turkey, and the Arab world. (Id. ¶ 4.) In 2004, Yesilada agreed to arrange a DLOC for Unuvar. (Id. ¶¶ 7, 11.) Yesilada contacted Carib Cay Ventures, Ltd. ("Carib Cay"), a North Carolina company that provides financial services for international transactions, and asked Carib Cay to arrange or originate the DLOC from a United States bank. (Id. ¶¶ 8, 12.) On November 15, 2004, Yesilada entered into a Memorandum of Understanding ("MOU") with Carib Cay, wherein Carib Cay promised to procure a DLOC and Yesilada agreed to pay a $180,000 lease fee to Carib Cay for the DLOC origination service. (Id. ¶¶ 12-13.) Yesilada agreed to pay the $180,000 within four

---

[1] Much of this factual summary was taken from the defendant's brief in support of its motion for partial judgment on the pleadings (filing 15), which the plaintiff accepts as "relatively accurate in echoing the facts stated in Plaintiff's Complaint." (Filing 19, Pl.'s Opp'n Mot. Partial Jmt. Pleadings at 2.)

2

days of the execution of the MOU. (Id. ¶ 14.)

Carib Cay recommended that the parties use defendant Whitmore as their escrow agent. Whitmore is an attorney located in Omaha, Nebraska. (Id. ¶ 15.) Yesilada interviewed Whitmore by telephone in early November of 2004 and subsequently agreed to use Whitmore as the escrow agent for its transaction with Carib Cay. (Id.) According to Yesilada's complaint, Yesilada signed one form of the escrow agreement in mid-November 2004, but Whitmore and Carib Cay signed a different escrow agreement containing different terms.[2] (Id. ¶¶ 17-19.) Yesilada alleges that "Defendant Whitmore did not seek Plaintiff Yesilada['s] agreement or signature on the altered document. Plaintiff Yesilada believed only Escrow Agreement I existed and was executed." (Id. ¶ 19.)

Both versions of the escrow agreements conferred the duty upon defendant Whitmore to hold the escrow funds until he verified the issuance of the DLOC which conformed to the form and text of the exemplar DLOC attached to the escrow agreements and/or the MOU. Both escrow agreements also conferred the duty upon defendant Whitmore to (1) release the funds to Carib Cay in the event Whitmore verified the issuance of a DLOC conforming to the exemplar included in the documents; or (2) return all funds within 12 days of the escrow deposit receipt to plaintiff Yesilada if the DLOC was not issued or not conforming. (Id. ¶¶ 21-22.)

On November 17, 2004, Yesilada transferred $180,000 into Whitmore's escrow account. (Id. ¶ 24.) Twelve banking days later, Whitmore released all or part of the escrow funds to Carib Cay without first receiving a DLOC. (Id. ¶ 25.) On December 10, 2004, Yesilada learned that Carib Cay had failed to secure a DLOC as it had

---

[2]The two escrow agreements are attached to the complaint. The plaintiff has not alleged in what way the agreements differ from one another. (Filing 1, Exs. B & C.)

3

promised in the MOU. (Id. ¶ 27.) On December 11, 2004, Yesilada wrote to Whitmore and demanded the return of the $180,000 "as required under the Escrow Agreement." (Id. ¶ 28.) The complaint alleges that Whitmore did not respond to Yesilada's demand for repayment of the money. (Id.)

Yesilada alleges that once it learned of Carib Cay's failure to secure the DLOC, it attempted to secure a replacement DLOC. (Id. ¶ 31.) Because Whitmore did not repay the $180,000, Yesilada was unable to pay the fees for the replacement DLOC and the replacement DLOC was not issued by the December 20, 2004, deadline. (Id. ¶¶ 31, 38.) As a result, Yesilada could not provide Unuvar with the DLOC and Unuvar was unable to pay for rebar needed to begin the construction project in Kuwait. Without the rebar, the Kuwaiti job site shut down, resulting in a work stoppage of 500 individuals. (Id. ¶ 39.)

As a result of the work stoppage, the Kuwaiti government has accused Al Fajji of breaching the $80 million construction contract and has threatened to cancel the general contract with a claim of potential damages resulting therefrom. (Id. ¶ 40.) In turn, Al Fajji has accused Unuvar of breaching its $15 million subcontract and has threatened its cancellation, along with a claim of potential damages resulting therefrom. (Id. ¶ 41.) Unuvar, in turn, has accused Yesilada of breaching the first phase of their $15 million DLOC supply agreement and has threatened cancellation of the agreement and a damages claim. (Id. ¶ 42.) Yesilada alleges that it will be held liable for damages relating to the rebar transaction, the subcontract, and the general construction contract. Finally, Yesilada alleges that Al Fajji and Unuvar are likely to take their business elsewhere in the future because a "company is often economically ostracized after a single incident of non-performance" according to "Middle East custom" that holds that "a breach of contract is a breach of one's word." (Id. ¶ 44.)

As stated above, Yesilada asserts claims against Whitmore for breach of an oral

4

and written escrow agreement, breach of fiduciary duty, professional negligence, conversion, and negligence. In a section of its complaint entitled "Damages," Yesilada claims that Whitmore's actions and failures proximately caused the following damages:

> a. Loss of $180,000 escrow deposit funds, plus interest;
> b. Loss of $81,000 fees paid to arrange additional funding and extensions regarding the replacement DLOC, plus interest;
> c. Liability to Unuvar, Al Fajji and the Kuwaiti government resulting from indemnification for the work stoppage and delay at the Kuwaiti construction site;
> d. Loss of profit from Plaintiff Yesilada's trade finance agreement with Unuvar to providing DLOC financial services relating to the $15 million supply subcontract between Unuvar and Al Fajji, estimated at 3% of gross or $450,000;
> e. Loss relating to consulting fees to facilitate maintenance of existing contracts and future business relations placed at risk from the inability to provide the DLOC by December 20, 2004;
> f. Loss of expected future business contracts and relations from Unuvar, Al Fajji, the Kuwaiti government and related general contractors and subcontractors;
> g. Court costs and attorney fees and punitive damages to the extent allowed by governing law.

(Id. ¶ 77.)

### III. Analysis

Defendant Whitmore requests that I grant his motion for partial judgment on the pleadings and dismiss all of Yesilada's damage claims, with the exception of the claim for loss of $180,000 in escrow deposit funds, plus interest. Whitmore argues that all of Yesilada's causes of action "are based on the allegation that Whitmore withheld money from Yesilada even though the contract required Whitmore to return

said money to Yesilada," and under New York[3] law, consequential damages stemming from a claim for "payment withheld although due" are not compensable. (Filing 15, Br. Supp. Def.'s Mot. Partial Jmt. Pleadings at 4.) I disagree.

Under New York law, "[a]n escrow agent not only has a contractual duty to follow the escrow agreement, but additionally becomes a trustee of anyone with a beneficial interest in the trust." Takayama v. Schaefer, 669 N.Y.S.2d 656, 659 (N.Y. App. Div. 1998). As a result, "the escrow agent becomes liable to his or her principals for damage proximately resulting from the breach of trust." National Union Fire Ins. Co. v. Proskauer Rose Goetz & Mendelsohn, 634 N.Y.S.2d 609, 614-15 (N.Y. Sup. Ct. 1994). Therefore, disposing of the escrow in a manner not strictly complying with the terms of the escrow agreement may constitute not only breach of contract, but also breach of the escrow agent's fiduciary duty and conversion. Takayama, 669 N.Y.S.2d at 659; Miller v. J.A. Keefe, P.C., 276 A.D.2d 757 (N.Y. App. Div. 2000) (use of escrow fund by attorney and law firm acting as escrow agents for purpose not provided for in escrow agreement constituted conversion); Fleming v. Sarva, 5 Misc.3d 1017(A), 2004 WL 2642247, at *4 (N.Y. Sup. Ct. Nov. 15, 2004).

> As trustee the escrow agent must make whole the party to which he or she owes a fiduciary duty for any damages arising from the breach of the fiduciary's duty, and the appropriate measure of damages requires placing the beneficiary in the same position it would have been in had the wrong not occurred.

Proskauer, 634 N.Y.S.2d at 615.

None of these authorities indicate that I should characterize the plaintiff's many claims as a single "payment-withheld-although-due" claim or that I should limit

---

[3] The parties agree that New York law applies here because both versions of the escrow agreement provide that New York law governs. (Filing 1, Complaint, Exs. B & C ¶ 12.)

damages for all claims to loss of the $180,000 in escrow deposit funds, plus interest.

Even if the plaintiff's claims were construed to be a single breach-of-contract claim, special or consequential damages would be permitted if the plaintiff could prove that such damages were "foreseeable and within the contemplation of the parties at the time the contract was made." N.Y. Pattern Jury Instructions, Civil 4:20.1 (2004) (Supplemental Charge: Contracts—Damages—Reduction—Benefit to Plaintiff). See also Schonfeld v. Hilliard, 218 F.3d 164, 175-76 (2nd Cir. 2000) (under New York law, plaintiff may seek general or market damages and special or consequential damages in action for breach of contract; types of consequential damages often sought are lost profits and lost income-producing assets).

Because defendant Whitmore has failed to establish that he is entitled to judgment as a matter of law as to the plaintiff's request for damages over and above money withheld plus interest, I shall deny his motion for partial judgment on the pleadings.

IT IS ORDERED that the defendant's motion for partial judgment on the pleadings (filing 14) is denied and the plaintiff's "opposition" (filing 19) to the defendant's motion is denied as moot.

August 2, 2005.

> BY THE COURT:
> s/*Richard G. Kopf*
> United States District Judge